IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHYNA F. SOLUS, <br><br> Plaintiff, <br><br> v. <br><br> REGIONS BANK; EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC, AND BELL & WILLIAMS ASSOCIATES, INC., <br><br> Defendants. | CIVIL ACTION FILE NO.: <br><br> 1:19-cv-2650-CC-JKL |

## **NON-FINAL REPORT AND RECOMMENDATION**

This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"), among other federal and state laws. The case is before the Court on Defendant Trans Union LLC's ("Trans Union") Motion to Dismiss Plaintiff's First Amended Complaint. [Doc. 23.] For the reasons that follow, it is **RECOMMENDED** that the motion be **DENIED**.

I. **BACKGROUND**

On September 25, 2016, Plaintiff Chyna F. Solus purchased a Nissan Rogue through a loan she obtained from Defendant Regions Bank. (First Am. Compl.

[Doc. 17] ¶ 11.) In November 2018, Plaintiff's daughter took the Nissan to a Sam's Club garage to repair its transmission. (*Id.* ¶ 14.) According to Plaintiff, Sam's Club—of its own accord and without any communication with Plaintiff—then contacted Regions Bank, which had the car towed, apparently because Plaintiff had failed to make payments on the car loan; though Plaintiff alleges that she "did and continues to, make timely payments" on the loan. (*Id.* ¶¶ 12, 15-17.) Plaintiff asserts that she first learned that Regions Bank had seized the Nissan approximately a month later, when she received a letter in late December 2018 from Defendant Bell and Williams Associates, Inc., a debt collector. (*Id.* ¶¶ 16, 95.) On December 28, 2018, Plaintiff paid Regions Bank $1,668.50 "to obtain the release of the Nissan," and on January 18, 2019, she paid Regions Bank an additional $276. (*Id.* ¶¶ 17-18.)

According to Plaintiff, beginning on or around February 28, 2019, Regions Bank reported "false, derogatory information to [consumer reporting agencies or "CRAs"] including Equifax, Experian, and Trans Union, stating Plaintiff had a voluntary repossession, had returned the Nissan voluntarily, had redeemed or reinstated the Nissan, or had Voluntarily Surrendered the Nissan." (First Am. Compl. ¶ 20.) Based on this information, beginning March 14, 2019, Trans Union

starting reporting that Plaintiff had voluntarily surrendered the vehicle to Regions Bank. (*Id.* ¶ 21.)

On March 23, 2019, Plaintiff was denied a lease on a car due to "RECENT AUTO CHARGE OFF" and "VOL REPO" being reported to Mercedes-Benz Financial Services USA LLC. (First Am. Compl. ¶ 24.) On April 4, 2019, Plaintiff, through counsel, sent dispute letters to Trans Union, Equifax, and Experian, explaining that the information reported by Regions Bank was false and requesting that the CRAs conduct an investigation. (*Id.* ¶ 25.) Trans Union forwarded the dispute to Regions Bank; however, it continued—and still continues—to report that the Nissan was voluntarily surrendered. (*Id.* ¶¶ 26-29.) As a result of Trans Union's actions, as well as the conduct of the other defendants, Plaintiff alleges that she has been denied credit and has suffered a significant amount of mental and emotional distress. (*Id.* ¶¶ 30-43.)

Plaintiff asserts one claim against Trans Union—that Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in her credit file after receiving notice of the inaccuracies. (First Am. Compl. ¶¶ 45-60.) Specifically, she alleges that Trans Union relied exclusively on Regions Bank's response to Plaintiff's dispute without conducting any additional investigation. (*Id.* ¶¶ 54, 57.)

In that way, according to Plaintiff, Trans Union violated 15 U.S.C. § 1681i by failing to conduct a "lawful reinvestigation[]"; "failing to maintain reasonable procedures with which to verify disputed information in Plaintiff's credit file"; and "relying upon verification from sources it has reason to know are unreliable, namely Regions Bank." (*Id.* ¶¶ 47-49.) She further alleges that Trans Union has "a regular practice or policy of ignoring disputed information from a consumer if it contradicts the information provided by a credit furnisher such as Regions Bank after a dispute is sent to the furnisher" and that "[i]t is objectively unreasonable to rely on a furnisher's verification of information without conducting an independent investigation if the furnisher's verification contradicts facts provided in a dispute when the furnisher and consumer's claimed facts contradict each other." (*Id.* ¶¶ 51-52.) Plaintiff alleges that Trans Union's disregard of the information that she provided (namely that she did not voluntarily surrender, redeem, or reinstate her vehicle as reported) was willful, or alternatively, negligent. (*Id.* ¶¶ 58-59.)

On September 13, 2019, Trans Union moved to dismiss Plaintiff's First Amended Complaint. [Doc. 23.] Plaintiff has responded in opposition [Doc. 26], and Trans Union has filed a reply in support [Doc. 27]. Trans Union's motion is therefore ripe for review.

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.  Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do," *id.,* and the Court is not required to accept as true legal conclusions couched as factual statements. *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not [shown]—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *see also Brown v. Crawford Cty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

### B. Trans Union's Contentions

In its motion to dismiss, Trans Union argues that the misinformation in the First Amended Complaint cannot support a claim under the FRCA. [Doc. 23-1.] More specifically, Trans Union contends that "only factual inaccuracies, not legal issues, can give rise to liability under the FCRA." [*Id.* at 7.] According to Trans Union, the alleged inaccuracy—that the Nissan rogue had been voluntarily surrendered—calls for a legal determination as to the legal status of the repossession that it is neither capable nor statutorily required to make.[1] [*Id.* at 7, 10-11.] As a result, Trans Union maintains, Plaintiff's § 1691i claim against it fails as a matter of law.

Trans Union additionally argues that Plaintiff's claim for willful violation of the FCRA fails because Plaintiff "failed to allege [either that] Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language" or "how Trans Union ran a risk of violating the FCRA that was

---

[1] Trans Union also argues for dismissal of a claim under 15 U.S.C. § 1681e(b); however, the First Amended Complaint contains no such claim against Trans Union. (*See* First Am. Compl. ¶¶ 44-60.) Thus, the Court limits its discussion to the failure-to-investigate claim under § 1681i.

substantially greater than the risk associated with a reading [of the FCRA] that was merely careless." [Doc. 23-1 at 13.]

The Court addresses each of these arguments in turn.

### C. Analysis

#### 1. Alleged Failure to Conduct a Reasonable Investigation

The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  To achieve this purpose, the FCRA places distinct obligations on three types of entities:  consumer reporting agencies, users of credit reports, and furnishers of information to CRAs.  *Chipka v. Bank of Am.*, 355 F. App'x 380 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1682s-2).  In this case, Plaintiff alleges that Trans Union is a consumer reporting agency.  (First Am. Compl. ¶ 8.)

The FCRA provides that when a consumer disputes with a consumer reporting agency the accuracy of any item of information in her file, the CRA shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days.  15 U.S.C. § 1681i(a)(1)(A).  To

prevail on a reinvestigation claim, then, a plaintiff must show that her consumer report contains inaccurate or incomplete information, the plaintiff notified the consumer reporting agency of the inaccuracy, the dispute is not frivolous or irrelevant, the consumer reporting agency failed to respond or conduct a reasonable reinvestigation of the disputed items, and the failure to reinvestigate damaged the plaintiff. *Steed v. Equifax Info. Servs. LLC*, No. 1:14-cv-437-SCJ-CMS, 2016 WL 7888040, at *11 (N.D. Ga. July 15, 2016), *report and recommendation adopted*, 2016 WL 7888039 (N.D. Ga. Aug. 31, 2016); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1329 (S.D. Fla. 2011).

As noted above, Trans Union contends that Plaintiff's § 1681i claim fails as a matter of law because evaluating the voluntariness of the Nissan's repossession calls for a legal determination and, thus, Trans Union was neither qualified nor obligated to resolve that characterization upon Plaintiff's dispute. [Doc. 23-1 at 6-11.] Plaintiff counters that she raised a dispute of fact, namely whether the car was voluntarily surrendered, and the issue "is the sort of factual dispute that a CRA is expected to investigate." [Doc 26 at 3-4 (citing *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972 (M.D. Fla. 1985)).] Plaintiff further argues that it was not reasonable for Trans Union to rely entirely on Regions Bank's

response to the disputed information without conducting an independent investigation of its own. [*Id.* ¶ 6-7.] On reply, Trans Union reiterates that the "legal consequences for why" Regions Bank repossessed the Nissan presents a legal issue that Trans Union is not able, or required, to answer. [Doc. 27 at 4.]

The principal question before the Court, then, is whether Plaintiff's dispute over whether the Nissan was "voluntarily surrendered"[2] is factual or legal in nature. At this stage in the proceedings, the Court cannot confidently make that determination one way or another. Trans Union's argument rests on several decisions that recognize the well-accepted principle that a consumer reporting agency is not obligated to resolve legal disputes between creditors and debtors. But the Court does not read those cases to mean that the determination of whether a debtor has voluntarily surrendered collateral (or whether the collateral was involuntarily repossessed) is, as a matter of law, the type of dispute for which no further investigation is required. To start, with the exception of just one district court decision, none of the cases that Trans Union cites was decided at the motion-

---

[2] Although Plaintiff offers various formulations of how the repossession of the Nissan was reported (*see e.g.*, First Am. Compl. ¶¶ 20, 24), she states that Trans Union reported "that the Plaintiff had Voluntarily Surrendered the Nissan to Regions Bank" (*see id.* ¶ 21).

9

to-dismiss stage of the proceedings.[3] Indeed, the Court is especially hesitant to opine as to whether Trans Union's remark of "voluntary surrender" on Plaintiff's credit report calls for a legal determination because neither party explains what the notation "voluntary surrender"—presumably a term of art—even means or how that determination is made.[4]

In addition, the cases on which Plaintiff principally relies present a narrower set of circumstances than the present case. Plaintiff's authority involved disputes in which a consumer was lodging a collateral attack on the validity of the entire underlying debt or lien being reported. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (affirming summary judgment to Trans Union where

---

[3] Specifically, *Campbell v. Equifax Information Services, LLC*, No. 4:18-CV-53, 2019 WL 1332375, at *7 (S.D. Ga. Mar. 25, 2019), the only case decided at the motion to dismiss stage in the proceedings, does not compel a finding that the determination of whether a repossession was voluntary is a legal issue. In that case, the court rejected a furnisher's argument that whether an account was discharged in bankruptcy was a legal determination. *Id.* at *7-8. Thus, the sole motion to dismiss case cited by Plaintiff is inapposite, since it is neither factually analogous nor supportive of Trans Union's request for dismissal.

[4] Trans Union argues that "After all, Trans Union does not have the capability, and ultimately, the responsibility, to research, understand, and interpret repossession laws in Georgia, decide whether Plaintiff's conclusion that the repossession was improper, and thereafter attempt to reconcile its position with that of Regions." [Doc. 23-1 at 11.] This argument essentially invites the Court to make factual assumptions in Trans Union's favor, which the Court cannot do at this stage of the proceedings.

borrower alleged that mortgage loan was invalid debt); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1245 (10th Cir. 2015) (affirming summary judgment to Trans Union where consumer disputed validity of tax lien); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (affirming summary judgment in favor of consumer reporting agencies where consumer challenged validity of medical debt).⁵ Here, Plaintiff's dispute does not involve the validity of any car loan, whether the Nissan was collateral for such a loan, or whether the Nissan was repossessed; rather, she disputes the characterization of the repossession as

---

⁵ In *Saunders v. Branch Banking & Trust Co. of Virginia*, also cited by Plaintiff, the Fourth Circuit recognized the general proposition that "Claims brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit." 526 F.3d 142, 150 (4th Cir. 2008). *Saunders* is inapplicable here, however, as that case dealt solely with the liability of a furnisher, rather than a consumer reporting agency, under § 1681i. Nor did the court in *Saunders* address the particular issue here, namely, the characterization of a repossession.

*Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013), is also unhelpful. In that case, the consumer challenged the amount of a child support deficiency reported by a state agency, however, he did not come forward with evidence suggesting the that the information was inaccurate. *Johnson* did not address the issue presently before this Court, namely, whether the consumer was collaterally attaching the underlying obligation.

Finally, Plaintiff's passing reference to *Cahlin v. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991), as indicating that the Eleventh Circuit would apply the holding of *DeAndrade* here only begs the question whether the dispute in this case calls for a legal, rather than factual, determination.

11

voluntary. In the absence of controlling authority from this circuit, the Court is reluctant to conclude at this early stage in the proceedings that, as a matter of law, the determination of whether the "surrender" of the Nissan was "voluntary" is necessarily legal question for purposes of the FRCA (and therefore, indistinguishable from a collateral attack on the underlying validity of a debt). That is not to say that Trans Union will not ultimately prevail on its argument that the determination of whether collateral has been voluntarily surrendered is a legal rather than factual dispute. Such a determination is better left until the parties have completed discovery, when the Court has the benefit a full record and can consider facts outside the pleadings.[6] Accordingly, Trans Union's argument for dismissal should be rejected at this stage.

---

[6] By the same token, the Court is not convinced that the reporting of a repossession is necessarily a factual, rather than legal, matter, as Plaintiff contends. The case on which Plaintiff chiefly relies, *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972 (M.D. Fla. 1985), did not address whether the purported inaccuracy in a consumer's report about a repossession was a legal dispute or a factual issue. Instead, the court focused on the reasonableness of the investigation itself, an issue that presupposes a factual inaccuracy. Likewise, *Krajewski v. American Honda Finance Corp.*, another case on which Plaintiff relies, actually supports the conclusion that a consumer reporting agency does not have a duty to determine whether a repossession of collateral was lawful. 557 F. Supp. 2d 596, 616-17 (E.D. Pa. 2008) (finding "as a matter of law that Trans Union did not have a duty to verify the accuracy of the information provided by [the creditor] with respect to the fact of the car's repossession," but also finding that an

### 2. Willfulness

To establish a claim for willful violation of the FCRA, a plaintiff must show that the defendant "either knowingly or recklessly violated" the requirements of the FCRA. *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). "An agency recklessly violates the [FCRA] if it takes an action that 'is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Id.* (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)).

Trans Union argues that Plaintiff has failed to state a plausible claim that it willfully violated its obligations to investigate under § 1681i because Plaintiff has not alleged that "Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language" or "how Trans Union ran

---

issue of fact existed as to whether Trans Union adequately investigated whether the borrower had been delinquent on her payments). Even so, Trans Union has not argued or established that the legality of a repossession is the same as the voluntariness of the same (the Court has doubts that they are), nor even that its reporting here pertained to one or the other of the legality or voluntariness of the Nissan's repossession.

a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless." [Doc. 23-1 at 13.] The Court disagrees.

In her complaint, Plaintiff alleges that Trans Union has a regular practice or policy of not independently investigating consumer disputes about the accuracy of information and instead blindly accepting information from furnishers. (First Am. Compl. ¶¶ 51-52.)  She further alleges that she notified Trans Union that Regions Bank had erroneously reported that the Nissan had been voluntarily surrendered, but that Trans Union—consistent with this alleged practice and/or policy—relied only on Regions Bank's response to resolve the dispute rather than conduct its own independent investigation. (*Id*. ¶¶ 54, 57-58.)  Finally, she alleges that Trans Union had reasons to know that Regions Bank was an unreliable furnisher of credit information. (*Id*. ¶ 49.)

These facts are enough at this juncture to meet the pleading requirements of Rule 8(a) in that they support the inference that Trans Union deliberately chose not to conduct a reasonable investigation concerning the purported error on her credit report. Whether Plaintiff can adduce sufficient evidence to support her allegations of a willful violation of the FCRA is better left for summary judgment or trial. *See Ellis v. Equifax Info. Servs., LLC*, No. 1:18-CV-5185-TCB-CMS, 2019 WL

3503538, at *5 (N.D. Ga. June 6, 2019) (finding allegations that "there was a fairly obvious error on her credit report, and that despite being made aware of the error, Trans Union did not fix it" sufficient to sustain willful violation claim at pleading stage), *report and recommendation adopted*, 2019 WL 5406558 (N.D. Ga. June 25, 2019); *Campbell*, 2019 WL 1332375, at *6 (holding that willfulness, and other states of mind, may be alleged generally at the pleading stage) (citing Fed. R. Civ. P. 9(b) and *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012)).  As a result, Trans Union's second argument for dismissal is without merit at this juncture.

### III.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Trans Union's motion to dismiss be **DENIED**.  [Doc. 23.]

IT IS SO RECOMMENDED this 6th day of February, 2020.

_____
JOHN K. LARKINS III
United States Magistrate Judge